UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-190-TWP-TAB-2 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DAVID QUINTANA | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:17-cr-00190-TWP-TAB-2 |
| DAVID QUINTANA, | ) ) ) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

This matter is before the Court on Defendant David Quintana's ("Mr. Quintana") Motion Seeking Compassionate Release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). (Dkt. 214.) Mr. Quintana seeks immediate release from incarceration based on his desire to help care for his aging parents and young children and based on his risk of severe illness should he contract COVID-19. Should the Court decide immediate release is not appropriate, Mr. Quintana alternatively requests an unspecified reduction in sentence. For the reasons explained below, his motion is **denied**.

### I. BACKGROUND

In 2018, Mr. Quintana pled guilty to one count of conspiracy to possess with the intent to distribute and to distribute 500 grams or more of methamphetamine (mixture) and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkts. 151, 155.) According to the presentence investigation report, between May 2016 and August 2017, Mr. Quintana conspired with other individuals to distribute drugs, including methamphetamine and heroin, in the Indianapolis, Indiana area. (Dkt. 142.) Mr. Quintana acted as a distributor for the drug trafficking organization. On seven different occasions between May 2016 and March 2017, a confidential

source purchased heroin from Mr. Quintana. Mr. Quintana also possessed multiple firearms during this time period. The Court sentenced Mr. Quintana to 151 months of imprisonment, to be followed by a 5-year term of supervised release. (Dkts. 151, 155.) The Bureau of Prisons ("BOP") lists Mr. Quintana's anticipated release date (with good-conduct time included) as June 17, 2028.

Mr. Quintana is 34 years old. He is currently incarcerated at FCI Milan in Milan, Michigan. As of September 29, 2021, the BOP reports that no inmates and one staff member at FCI Milan have active cases of COVID-19; it also reports that 230 inmates at FCI Milan have recovered from COVID-19 and that three inmates at FCI Milan have died from the virus. https://www.bop.gov/coronavirus/ (last visited Sept. 30, 2021). The BOP also reports that 826 inmates at FCI Milan have been fully inoculated against COVID-19. *Id.* That is more than half of the inmates at FCI Milan who have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Sept. 23, 2021, the BOP reports that FCI Milan has a total inmate population of 1405).

Mr. Quintana filed his motion for compassionate release *pro se*, arguing that he is entitled to compassionate release based on his risk of severe illness should he contract COVID-19 and because he would like to help care for his young child and aging parents. (Dkt. 214.) Mr. Quintana argues that he is at higher risk of severe illness from COVID-19 because he has hypertension. He also argues that he has a job, a place to live, and health insurance waiting for him when he is released. Mr. Quintana further argues that he would like to be released to care for his minor child, who is currently in the custody of Mr. Quintana's brother. Mr. Quintana would also like to help care for his aging parents, both of whom have health issues. The United States filed its opposition to the motion, arguing that Mr. Quintana's controlled hypertension does not constitute an "extraordinary and compelling reason" for his release. (Dkt. 217.) The United States further argues

3

that Mr. Quintana's disagreement with the state court's choice of caregiver for his minor child does not constitute an "extraordinary and compelling reason" for his release; nor does his desire to provide care for his aging parents. Finally, the United States contends that Mr. Quintana still poses a significant danger to the safety of the community, and the section 3553(a) factors strongly weigh against his release. Mr. Quintana did not file a reply. In response to orders from the Court, both parties filed supplements. (Dkts. 236, 242.) In his supplement, Mr. Quintana confirmed that he had received his both doses of the Pfizer COVID-19 vaccine. He argues that his request for release nonetheless remains viable because vaccines are "rapidly and progressively losing effectiveness" and breakthrough infections are still occurring; because he is unable to perform "self-care" in the form of diet and exercise for his hypertension due to the ongoing lockdowns; and because he would like to care for his young child and aging parents.[1] (Dkt. 242.) As explained below, Mr. Quintana has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). Thus, whether he seeks immediate release or a smaller sentence reduction, his motion must be denied.

## II.  DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons."

---

[1] With regard to his argument about "self-care," Mr. Quintana alleges that he is not receiving adequate recreation time or a "heart healthy" diet to address his hypertension. (Dkt. 242 at 6.) However, there is no indication that his ability to function and meet his daily needs in a prison setting have been affected in any meaningful way by the COVID-19 recreation and dietary restrictions. Such allegations might form the basis for relief in a civil suit filed in Mr. Quintana's district of incarceration but are not grounds for a sentence reduction under § 3582(c)(1)(A), whether considered alone or in conjunction with his other bases for relief. *See United States v. Dotson*, 849 F. App'x 598, 601 (7th Cir. 2021).

Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners.

6

*United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

**A.     COVID-19**

The risk that Mr. Quintana faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him.[2] While the Court sympathizes with Mr. Quintana's fear of becoming infected with the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the

---

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Quintana's warden in denying Mr. Quintana's administrative request for relief. Mr. Quintana's warden appears not to have considered the possibility that Mr. Quintana could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. (*See* Dkt. 214-1.) Thus, the warden's decision provides little guidance to the Court's analysis.

possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Mr. Quintana suffers from a health condition (hypertension) that, according to the Centers for Disease Control and Prevention ("CDC"), can possibly make one more likely to become severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 27, 2021).[3] Earlier in the pandemic, the Court found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v. Johnson*, No. 1:99-cr-59-JMS-DML-06, Dkt. 317 (S.D. Ind. Mar. 11, 2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States, including the Pfizer vaccine that Mr. Quintana received. (*See* Dkt. 242.) Although no vaccine is perfect, the CDC has recognized that mRNA vaccines like the Pfizer vaccine are effective at preventing COVID-19 and that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-

---

[3] The CDC has not definitively determined that hypertension increases the risk of severe COVID-19 symptoms. Instead, it has said only that hypertension can *possibly* increase the likelihood of severe illness from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Nonetheless, for purposes of this Order, the Court will assume that Mr. Quintana has a condition that does, in fact, present a higher risk for severe illness from COVID-19.

ncov/vaccines/effectiveness/work.html (last visited Sept. 27, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States. *Id.* The vaccines are not 100% effective, and some vaccinated people may still get sick. *Id.* The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

COVID-19 vaccines have been made widely available within the BOP. As of September 24, 2021, the BOP has administered more than 225,000 doses of the vaccine and has fully inoculated tens of thousands of BOP staff members and inmates. *See* https://www.bop.gov/coronavirus/ (last visited Sept. 27, 2021). Mr. Quintana has now received both doses of the COVID-19 vaccine—thus, dramatically reducing his chances of being infected with COVID-19 and suffering severe symptoms if he is infected. In addition, as noted above, more than half of the inmates housed at FCI Milan have received both doses of the COVID-19 vaccine. This rate of vaccination at FCI Milan should provide Mr. Quintana with additional protection against infection. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Sept. 27, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you."). The BOP has also met with recent success in controlling the COVID-19 virus at FCI Milan. As noted above, the BOP reports that no inmates at FCI Milan currently have active cases of COVID-19.

Recently, the Seventh Circuit held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at 803. Moreover, the court concluded that "[t]he federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective." *Id.* The Seventh Circuit reinforced its position on this issue in a subsequent case, *United States v. Burgard*, 857 F. App'x 254, 254 (7th Cir. 2021), in which it concluded that a prisoner with asthma had not established extraordinary and compelling reasons warranting compassionate release based on risk from COVID-19 because "the widespread availability of the COVID-19 vaccine within the Federal Bureau of Prisons likely eliminate[d]" release on such a basis. As in *Broadfield*, nothing in the record indicated that Mr. Burgard was unable, medically or otherwise, to receive the vaccine; moreover, approximately 80% of the inmate population at his prison had been vaccinated. *Id.* Consequently, he was not entitled to release. *Id.*

Here, Mr. Quintana has been fully vaccinated against COVID-19, more than half of inmates at his facility have been fully vaccinated, and there are no inmates with current COVID-19 infections at his facility. Given these facts and the rationales of *Broadfield* and *Burgard*, the Court declines to exercise its discretion to find that the risk Mr. Quintana faces from the COVID-

19 pandemic, whether considered alone or in conjunction with his other bases for relief, constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, Dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated); *United States v. Schoonover*, No. 1:02-cr-156-JMS-TAB-01, 2021 WL 1814990, at *4 (S.D. Ind. May 6, 2021) (same); *see also United States v. Harris*, No. 4:16-cr-40073-SLD, 2021 WL 2021440, at *3 (C.D. Ill. May 20, 2021) ("In light of his vaccination and the low number of cases at USP Lompoc currently, the Court finds that Defendant has not shown extraordinary and compelling reasons for release exist based on the COVID-19 pandemic.").

Mr. Quintana argues that his vaccinated status does not affect his motion because the vaccines are "rapidly and progressively losing effectiveness" and breakthrough infections are still occurring. (Dkt. 242.) As of September 20, 2021, more than 181 million people in the United States had been fully vaccinated against COVID-19. During the same time, the CDC received reports from 50 U.S. states and territories of 19,136 patients with COVID-19 vaccine breakthrough infection who were hospitalized or died. *See* https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited Sept. 27, 2021). All inmates—and, indeed, all people—are subject to some risk from infectious disease. While the COVID-19 vaccine may not offer Mr. Quintana perfect protection, the risk that he will become severely ill or die from the virus has been so substantially diminished that it is not an extraordinary and compelling reason warranting relief.

**B.    Care for Family**

Mr. Quintana also seeks compassionate release because his minor daughter is currently in the custody of Mr. Quintana's brother due to the child's mother being unable to care for her. (Dkt.

11

214 at 1.) Mr. Quintana states that his brother has two children of his own and it would be easier on his brother if Mr. Quintana was around to care for his daughter himself. While the Court is sympathetic to Mr. Quintana's desire to care for his daughter and ease the burden on his brother, it is clear that his daughter is currently in a safe home with an adult who is willing and able to provide her with more than adequate care. This is not a situation where there are no other available caregivers for a minor child. Many prisoners would like to be in their children's lives but that is an unfortunate consequence of their crimes. In short, Mr. Quintana's wish to care for his child is not an extraordinary and compelling reason to reduce his sentence.

Mr. Quintana's concern about his parents' health is also insufficient to establish extraordinary and compelling reasons to grant compassionate release. He states that since his incarceration, his mother has been incapacitated by two strokes, and his father is a double amputee. (Dkt. 242 at 2.) Mr. Quintana further states that his parents are in their 70s and in need of help, and he is the only available caregiver. Many inmates have aging and sick parents and family members whom they might like to support. The desire to care for an elderly or ill parent, however, is not an extraordinary and compelling reason warranting a sentence reduction. *Cf. United States v. Trice*, No. 1:13-cr-222-TWP-DML-1, Dkt. 114 at 5 (S.D. Ind. Aug. 4, 2020) (collecting cases about defendants requesting compassionate release to care for elderly or ill parent); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-1, Dkt. 33 (S.D. Ind. Aug. 12, 2020) (same); *United States v. Crandle*, 2020 WL 2188865, at *3 & n.27 (M.D. La. May 6, 2020) (same); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Whether considered separately or in conjunction with his other bases for relief, Mr. Quintana's family circumstances do not establish ordinary and compelling reasons warranting compassionate release.

Because the Court declines to find extraordinary and compelling reasons warranting release, it need not determine whether the § 3553(a) factors warrant release. Even if Mr. Quintana had established extraordinary and compelling reasons warranting compassionate release, however, the Court would nevertheless deny his motion. Mr. Quintana reports that he has a job and residence lined-up if he were to be released, and he argues that the time he has served thus far has been more difficult than contemplated at the time of sentencing due to the COVID-19 lockdowns. (Dkt. 242 at 8.) However, Mr. Quintana received a serious sentence for a serious crime. He has only completed approximately 38% of that sentence and still has 6 ½ years remaining before he is scheduled for release. For that reason, the Court finds that the § 3553 factors also weigh against granting his motion. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("all a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion such as Ugbah's is enough; more would be otiose.").

### III.   CONCLUSION

For the reasons stated above, Mr. Quintana's motion for compassionate release, Dkt. [214], is **DENIED**.

**SO ORDERED.**

Date:  10/1/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

All Electronically Registered Counsel

David Quintana, Reg. No. 15904-028
FCI Milan
Federal Correctional Institution
P.O. Box 1000
Milan, Michigan  48160

Cindy Jane Cho
UNITED STATES ATTORNEY'S OFFICE
cindy.cho@usdoj.gov

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE
kendra.klump@usdoj.gov